**Dr. Robert Lee ELLIS III,**
**etc., et al., Plaintiffs,**

**v.**

**SECRETARY OF STATE OF ILLINOIS,**
**et al., Defendants.**

No. 95 C 2337.

United States District Court,
N.D. Illinois,
Eastern Division.

April 24, 1995.

Robert Lee Ellis III, pro se.

## MEMORANDUM OPINION
## AND ORDER

SHADUR, Senior District Judge.

Robert Lee Ellis III ("Ellis") and a number of other plaintiffs have tendered a self-prepared 8–page Complaint (captioned "Emergency Mandamus Civil Rights Complaint & Action Under the Religious Freedom Restoration Act 42 USC 2000bb") together with a related 37–page document (captioned "Memorandum and Narrative in Support of Emergency Motion for Injunctive and Declaratory Relief"), seeking (1) leave to proceed without payment of the filing fee and (2) the appointment of counsel to act for plaintiffs pro bono publico. On April 18, 1995 (the day after he first presented the Complaint and Memorandum to the Clerk's Office) Ellis appeared before this Court with a motion for emergency injunctive and declaratory relief, but without disclosing either to this Court or to opposing counsel that he was not yet authorized to proceed with this action at all. This Court considered his motion on the merits because of that lack of disclosure, ultimately entering and continuing the motion to April 24. But now that the actual status of the action has become known, it is necessary that this Court address the matter in the terms that are universally applicable to such in forma pauperis requests.

■ To begin with, there is a serious doubt that Ellis personally qualifies for in forma pauperis status in financial terms. Although his accompanying Application To Proceed In Forma Pauperis recites that his only source of funds is from donations to him as a minister and that he is "currently in bankruptcy-cash flow problem," both the Memorandum and his oral representations to this Court assert that he has access to (or, as stated hereafter, perhaps has ownership of) very substantial assets—a large tract of real estate,[1] numerous motor vehicles referred to in the Complaint and a cabin cruiser (referred to at Mem. 20–21). And even though Complaint ¶ 5 alleges that the motor vehicles belong to Beta Christian University ("University") and though the Memorandum speaks in similar terms about the other assets, when this Court questioned Ellis on April 18 as to his personal standing to assert the claims contained in the Complaint Ellis insisted that the property was really *his* as a "corporation sole" (akin to the structure of

---

1. Mem. 50 refers to "a 7–acre site located at 15400 Dixie Highway nr. Harvey, Illinois valued at 10 million dollars."

the Catholic Church). Those muddy waters would have to be cleared if Ellis were indeed to proceed without payment of the filing fee, but at least for the moment this opinion will assume that Ellis would be able to cure any flaws so as to demonstrate his entitlement to in forma pauperis treatment.

■ Before the consequences of that assumption are translated into any consideration of Ellis' substantive claims, however, the position of the other putative plaintiffs—University and others that are labeled as "Beta University Police" and "all Beta Auxiliaries" (whatever that may mean)—should be addressed. None of them has offered any showing as to its inability (or their inability in the case of the "auxiliaries") to pay the filing fee. Accordingly leave is not granted to any of them to proceed,[2] and they are all dismissed as plaintiffs without prejudice. This dismissal however gives any of them the opportunity, within the time specified by Fed.R.Civ.P. ("Rule") 59(e), to pay the fee or to tender an appropriate financial showing—and in either event to appear through proper counsel.

To return to Ellis individually, the Complaint says that it is brought pursuant (1) to the Religious Freedom Restoration Act of 1993 (the "Act," 42 U.S.C. §§ 2000bb to 2000bb–4[3]), which has enacted a legislative overruling of *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), (2) to several Amendments contained within the Bill of Rights,[4] (3) to the Fourteenth Amendment and (4) to a number of provisions of the Civil Rights Acts that have been codified within Title 42. In addition the Complaint seeks to invoke what it terms the pendent jurisdiction of this District Court (although that concept has been overtaken by the supplemental jurisdiction provisions of 28 U.S.C. § 1367), by alleg-

ing violations of a number of Illinois statutory and constitutional provisions. All of the claims target as defendants the State of Illinois, its Governor Jim Edgar, its Secretary of State George Ryan, Secretary of State investigator Keith Lake and various "other unknown and unnammed [sic] defendants et al."

■ Having assumed (in Ellis' favor) his ability to meet the financial-need requirements to proceed in forma pauperis, this Court is next required to determine which if any of his assertions surmounts the hurdle of legal "frivolousness" as defined in *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) and reconfirmed in *Denton v. Hernandez,* 504 U.S. 25, 31–35, 112 S.Ct. 1728, 1733–34, 118 L.Ed.2d 340 (1992). That latter requirement proves fatal to Ellis' attempt to obtain in forma pauperis status:

1. All claims in the Complaint that purport to be based on violations of state law are beyond the jurisdiction of this federal court under *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Nor is that conclusion altered by the existence of the Act, as a moment's thought demonstrates. Suppose that some conduct of a defendant does violate some state-law provision—that violation still does not render that conduct actionable in the federal court unless the selfsame conduct is violative of some *federal* right, a determination that must be made independently of the state-law violations. Accordingly all claims that point to state law as a sole source of relief must be and are dismissed.

2. No direct right of action under the United States Constitution exists against state actors, as would be comparable to the right as to federal governmental employ-

2. As this Court pointed out to Ellis during his April 18 effort to obtain preliminary injunctive relief, the putative plaintiffs other than Ellis himself face the additional problem that he cannot appear in this case, as he attempts to do, as their "agent." Corporations and other entities, unlike individuals, cannot appear pro se or through any representative other than a licensed attorney.

3. Further citations to Title 42 provisions will take the form "Section—," referring to the Title 42

numbering rather than to the individual numbering of any Act codified within that Title.

4. As always, this opinion will adhere to the conventional and convenient (though technically imprecise) practice of referring to the underlying Bill of Rights provision (which of course imposes limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody such Bill of Rights guaranties).

ees announced in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)—see the discussion in Sheldon Nahmod, *Civil Rights and Civil Liberties Litigation* § 6.18 (3d ed. 1991), and cf. *Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 732 n. 3 (7th Cir.1994). That means that any claim of federal constitutional violations by defendants must be brought under Section 1983, unless the Act were to be viewed as overriding that principle.

3. Under Section 1983 no action will lie against the State of Illinois, any of its agents or any of its personnel who are sued in their official capacities (the legal equivalent of suing the State itself)—as to the State itself, see *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), and as to official capacity actions, see *id.* at 71, 109 S.Ct. at 2312). It is unnecessary to consider whether the Act works any change in that respect, for the essence of Ellis' grievance is not that he is being injured by the operation of state law (thus rendering the State potentially liable if the Act were held to supersede Section 1983). Instead Ellis contends that it is *violations* of state law that give rise to his asserted damages.

4. Somewhat relatedly, nothing in the Complaint (even with reasonable inferences drawn in Ellis' favor) suggests any personal involvement of Governor Edgar—nor, despite the euphemistic assertion in Complaint ¶ 5 that it was the "Secretary of State" who revoked the license plates and titles of various motor vehicles, does Ellis really claim any personal involvement of Secretary of State Ryan either. Leave therefore cannot be granted to proceed against them, leaving only investigator Lake as a potential Section 1983 defendant who has the requisite personal involvement.

5. Finally for present purposes,[5] this Court returns to the place of beginning. Complaint ¶ 5 alleges the revocation of license plates and certificates of title of vehicles "belonging to Beta Christian University," something about which only University—and not Ellis—can complain. As for Complaint ¶¶ 6 and 7, they speak of claimed violations of Ellis' First Amendment rights only in terms of the potential for unconstitutional searches and seizures, not in terms of the actuality or even overt threats of such action. Such a potential does not constitute a present *deprivation* of Ellis' liberty by a violation of the First Amendment's Free Exercise Clause.[6] Hence Ellis has also failed to advance any claim that meets the operative *Neitzke–Denton* standard.

In sum, none of the Complaint survives analysis in terms of legal "frivolousness." In accordance with the procedure prescribed by *Denton,* 504 U.S. at 33–35, 112 S.Ct. at 1734, this action is dismissed without prejudice pursuant to 28 U.S.C. § 1915(d).[7] In addition Ellis is informed:

1. If he wishes to appeal this order of dismissal, within 30 days after the entry of judgment he must file a Notice of Appeal

5. "For present purposes" is used advisedly here. Even if University were able to cure its earlier-identified problems as a plaintiff, or even if Ellis were able to overcome the problem next mentioned in the text, it would still be necessary for the eligible plaintiff or plaintiffs to make a case that the cancellation of motor vehicle license plates and title registrations constitutes a deprivation of property without due process of law—the necessary ingredient of a Fourteenth Amendment claim. In that respect 625 ILCS 5/2–118 expressly affords a prompt hearing to anyone who is affected by any such cancellation (something that Ellis acknowledged in open court on April 18, having had a number of such hearings in the past). And the availability of that state law process (even though not yet afforded to Ellis in the instance alleged in the Complaint) may fatally undercut any Section 1983 claim based on the facts set forth in the Complaint. That question need not be resolved now, however.

6. Indeed, during Ellis' in-court appearance when he was seeking preliminary injunctive relief, he confirmed that he had first learned of the cancellation of a vehicle license when he was informed of it by a police officer who did *not* then interfere with Ellis' ability to go about his business.

7. This dismissal moots Ellis' contemporaneously-submitted motion for the appointment of counsel. But in that respect Ellis' attention is called to the fact that he has completely ignored the portion of that motion form that requires a statement of the efforts that any plaintiff has previously made to retain counsel (see *Jackson v. County of McLean,* 953 F.2d 1070, 1073 (7th Cir.1992)).

to the United States Court of Appeals for the Seventh Circuit (see Fed.R.App.P. 4(a)). That Notice of Appeal must be filed with the Clerk of the Court of the United States District Court, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604.

2. Although this Court of course expresses *no substantive views on this subject*, Ellis should also be aware that if the Court of Appeals were to determine that such an appeal were "frivolous" in the legal sense, that could result in the imposition of sanctions by that Court (see Fed.R.App.P. 38).